IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES LIGGETT, JR.,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        CIVIL ACTION NO. 2:12CV295-WKW
                                       )
CAROLYN W. COLVIN, Acting              )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff James Liggett, Jr., proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for Medicare benefits as a qualified government employee under Title II of the Social Security Act and his application for supplemental security income under Title XVI of the Act.   Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## BACKGROUND

Plaintiff filed his applications for benefits on November 5, 2009, alleging that he became disabled on June 1, 2005, due to back pain, a wrist injury, arthritis, a lung condition and COPD.  Plaintiff described work in the fifteen years preceding his alleged onset date as a corrections officer, an engineering assistant and a delivery driver.  He  alleged that he had

suffered constant knee pain since 1973, constant extreme back pain since 1984, and intermittent wrist and shoulder pain since 1988, and that his lung condition awakens him hourly throughout the night with a sensation of drowning. (Exhibits C1D, C2D, C1E, C2E, C4E, C5E). Plaintiff reported that one of his prescribed medications, Etodolac, causes "sleepiness," and that he takes niacin, which makes him "itchy." (R. 133). After his applications were denied at the initial administrative levels, plaintiff requested a hearing before an administrative law judge. (Exhibits C1A, C2A, C2B-C5B, C10B). The ALJ held the requested hearing on March 31, 2011. (R. 22-42). Plaintiff appeared *pro se*, and waived his right to representation.[1]

On May 6, 2011, the ALJ issued a decision denying plaintiff's claims. (R. 14-21). As to plaintiff's Title II claim, the ALJ determined from plaintiff's earnings record that plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 1997. (R. 14, 16).[2] Plaintiff alleged disability beginning on June 1, 2005 (see R. 100), more than seven years after his date last insured. The ALJ concluded that, while plaintiff has medically determinable impairments of mild chronic bronchitis, benign granulomatous disease and knee

---

[1] See R. 24-25 (ALJ's explanation of right to representation); Exhibit C12B (signed acknowledgment of right to representation and waiver); Exhibit C7B (notice including explanation of right to representation sent to plaintiff two months before the hearing); Exhibit C6B (notice sent to plaintiff seven months before hearing, explaining his right to representation).

[2] Plaintiff does not challenge this finding, and it is supported by substantial evidence. See 42 C.F.R. § 406.15 (incorporating requirements of § 406.12); 20 C.F.R. 404.130; R. 113, 119 (No FICA or MQGE earnings between the fourth quarter of 1992 and the first quarter of 2001; six quarters of coverage in 2001 and 2002 and none thereafter).

arthralgias, he "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months" and, therefore, he does not have a severe impairment or combination of impairments. (R. 16). Thus, the ALJ concluded that plaintiff was not under a disability as defined in the Social Security Act at any time between his alleged onset date through the date of the ALJ's decision. (R. 20-21). Plaintiff sought review from the Appeals Council by letter dated May 31, 2011. (R. 9-10). In October and November 2011, and in January 2012 plaintiff sent additional evidence to the Appeals Council. (Exhibits C6F, C7F and R. 5-8). On February 16, 2012, the Appeals Council denied review. (R. 1-4). Plaintiff commenced this action thereafter. (Doc. # 1).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985

F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff contends that the Commissioner's decision is due to be reversed because (1) the combination of his injuries, their effects, mental and physical stress and fatigue demonstrate disability; (2) he filed an application "in a timely fash[i]on before the cut off date; (3) clerical errors played a part in the SSA decision; and (4) the SSA is not "dealing fairly in regard to it[]s own Rules, Regu[l]ations, and Establishment." (Doc. # 11, p. 3).

### Alleged "Clerical" Errors and Timeliness

As to the second and third contentions listed above, plaintiff argues:

Furthernthe Plantiff points to Clerical Errors in the SSA Records, the Plantiff point to page 18 paragarph 2, where it states that the Plantiff was a Medic for the state, The Plantiff was a Correctional Counselor (77-81) for the Alabama Depertment of Correctionb. in the same paragarph of the SSA Records it states that the Plantiff was employed by the Federal Justice Depart ment for 4 years, wherein was employed from 82-92. the Plantiff never worked at air express , nor the Dept of Agriculture. the Plantiff was employed air borne express, and the Alabama Department of Transportation (see page 148 of the SSA Records). the plantiff also point to page 18 paragarph 3, Where in Dr. Lipton never X-Rayed the Plantiff, unless he received x-rays from the VA Hospital. the Plantiff point to page 14 paragarph3and it's content, as the plantiff maimtains that he filed with the SSA before the date of elgibilty cut off in a attempt to let them know that he was having health problems. .

(Doc. # 11, pp. 2-3)(errors in original).

### Work History

The work history form plaintiff completed in connection with the present applications

lists his work as an Army medic for three years, followed by five months as a machine and forklift operator at Trane, four years as a correctional counselor for the Alabama Department of Corrections, ten years as a correctional officer at the federal correctional institution in Talladega, six months as a surveyor for the Alabama Department of Transportation, and a couple of months as a delivery driver for Airborne Express.  (R. 163).  In a section of the VA treatment note for plaintiff's July 27, 2002 evaluation bearing the heading, "MEDICAL HISTORY (SUBJECTIVE COMPLAINTS)[,]" the examining provider wrote, in part:

> In 1974 while on duty the patient had a spontaneous dislocation of the right patella, which spontaneously reduced.  At that time he was offered corrective surgery but opted to have extended rehabilitation.  *He left the service in 1976 and was employed thereafter as a medic for three years for the State Department of Corrections for four years for the Federal Department of Justice for ten years and the Air Express Company and the Department of Agriculture as well.  During all of these periods of employment* the patient recalls no time being lost from work as a result of his knee.  He states that in the last 28 years the knee has popped out somewhere between five and eight times.

(R. 188)(emphasis added).  In the portion of the ALJ's decision cited by the plaintiff, the ALJ summarizes this evidence of record.  (See R. 18).  The ALJ recounts this section of the provider's treatment note as follows:

> Progress notes state that, in 1974, while on (military) duty, the claimant had a spontaneous dislocation of the right kneecap (patella).  At that time he was offered corrective surgery, but he opted to have rehabilitation.  *He left the service in 1976 and was employed thereafter as a medic for three years for the State Department of Corrections, for four years for the Federal Department of Justice, and for ten years for the Air Express Company and the Department of Agriculture.*  During all of these periods of employment, he recalled no time being out from work as a result of his knee.  In the last twenty-eight years, his knee had popped out somewhere between five and eight times.

(Id.)(emphasis added). Assuming that plaintiff relayed his work history to his medical provider as it is stated in his work history report (R. 163), it appears that that history was garbled somewhat with each subsequent transmission. If the ALJ erred at all, it was by placing commas in his summary that may have changed the meaning intended by the provider. In any case, the error in summarizing the treatment note is harmless. The ALJ did not rely on the provider's note to determine plaintiff's past work history. Instead, in counting the plaintiff's quarters of coverage for purposes of his Title II claim, the ALJ relied on plaintiff's earnings record; for this purpose, the source of the reported earnings does not matter. (R. 14; see also Exhibits C3D through C8D; 20 C.F.R. 404.130).[3]

## Knee X-rays in 2002

The second clerical error that plaintiff alleges is the ALJ's statement, on page 18, that "X-rays taken of the knees were normal." (Doc. # 11, p. 3). Plaintiff argues that "Dr. Lipton never X-Rayed the Plaintiff, unless he received x-rays from the VA Hospital." (Id.). Here again, the ALJ is summarizing the provider's treatment note for the July 2002 evaluation. (R. 18). The provider wrote, "Review of x-rays taken on the day of this examination revealed normal bony architecture throughout. The joint surfaces are all smooth without any signs of degenerative changes. Particular attention was paid to the patellofemoral joint and this also appeared normal." (R. 189). The court finds no error here; the ALJ's summary of the treatment note reflects the x-ray result reported by the provider accurately.

---

[3] As the ALJ stated at the hearing (R. 37-38) and as the Commissioner notes (Doc. # 12, p. 2), plaintiff's only potentially relevant past work was his surveying job with the Department of Transportation. See generally, 20 C.F.R. §§ 404.1560, 416.960.

<u>Timing of Applications</u>

Plaintiff's timeliness contention relates to the third paragraph of the ALJ's decision. (Doc. # 11, p. 3)(citing R. 14 at ¶ 3).  Here, the ALJ writes, "The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 1997.  Thus, the claimant must establish disability on or before that date in order to be entitled to Medicare benefits as a qualified government employee."  (R. 14).  Plaintiff does not dispute the date last insured calculated by the ALJ, but argues that "he filed with the SSA before the date of [eligibility] cut off in a[n] attempt to let them know that he was having health problems." (Doc. # 11, p. 3).  Plaintiff attaches to his brief a receipt for an earlier claim for supplemental security income dated September 22, 1997.  (Doc. # 11-1).

Plaintiff misunderstands the scope of the proceedings before the ALJ and, thus, before this court; the applications before the ALJ for decision were those filed by the plaintiff on November 5, 2009, in which he alleged that his illness, injuries or conditions first interfered with his ability to work on December 2, 2002 and rendered him unable to work *on June 1, 2005*.  (R. 100, 128; Exhibits C1D, C2D (applications filed 11/5/09); Exhibits C2B, C4B (notice of disapproved claims dated 3/12/10 and 3/15/10, including notice of right to request a hearing within 60 days of receipt of the letters); Exhibit C10B (plaintiff's 5/10/10 request for hearing).  Plaintiff's proof that he filed a different claim twelve years previously does not impeach the ALJ's decision in any way.  The ALJ did not base his decision on the filing date of the present Title II application, and his observation that plaintiff must establish disability on or before his date last insured to be entitled to Medicare benefits is correct.  (R. 14; <u>see</u>

regulatory provisions cited in n. 2, *supra*).  Plaintiff's evidence of a 1997 SSI claim does not demonstrate error as to his present claims.

In his reply brief, plaintiff points to additional instances of alleged "Clerical Error[]s or Omissions."  (Doc. # 15, ¶ 5)(citing id., ¶¶ 2-4).  In the cited paragraph 2, plaintiff repeats his argument that he applied for Social Security benefits "before the Dec 1997 deadline," adding that he had also applied for Medicare benefits.  (Doc. # 15, ¶ 2).  Again, the fact that plaintiff filed previous claims does not call into question the ALJ's decision on plaintiff's present applications.

### "Missed" Consultative Examination

In paragraph 3 of his reply brief – also cited as a "clerical" error or omission – plaintiff "argue[]s that on several prior occasions that he reported to appointments arranged by the SSA and was never X-Raye[d], thus the last appointment was missed."  (Doc. # 15, ¶¶ 3, 5).  It appears that plaintiff again refers here to his previous applications. The administrative record in the present case reflects that the disability examiner scheduled only one consultative examination – for a pulmonary function test on March 10, 2010 – and that plaintiff refused to report for evaluation, telling the disability examiner that "they are not equipped to evaluate me there."  (R. 190-91; see "F" exhibits generally).  At the hearing, plaintiff explained, "[I] called out there and I asked them could they x-ray me.  And they said they couldn't, so I did not go."  (R. 27).  Thus, the documentation in the record is correct; there is no clerical error as to plaintiff's failure to attend the scheduled consultative examination.

To the extent that the *pro se* plaintiff's argument could be construed to complain of the ALJ's failure to order a consultative x-ray, the court finds no error.

> The ALJ has a basic obligation to develop a full and fair record, and must develop the medical record for the twelve months prior to the claimant's filing of her application for disability benefits. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir.2003). This duty requires the ALJ to order a consultative examination when such an evaluation is necessary to make an informed decision. Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir.1988). If the record contains sufficient evidence to allow an informed decision, however, the ALJ is not required to order a consultative examination. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir.2007).

> "Nevertheless, the claimant bears the burden of proving that [he] is disabled, and, consequently, [he] is responsible for producing evidence in support of [his] claim." Ellison, 355 F.3d at 1276. Additionally, a claimant must demonstrate that [he] was prejudiced by the ALJ's failure to develop the record before a due process violation will justify remand. Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir.1997). In making this determination, we are "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id.

Smith v. Commissioner of Social Security, 501 Fed. Appx. 875, 878-879 (11th Cir. 2012). The disability report form that plaintiff completed in support of his applications required him to provide information about the medical providers who may have records or information about his illnesses, injuries or conditions. (R. 130). For the twelve months preceding the filing of his November 2009 claims, plaintiff identified only one such provider – the Veterans Administration medical facility. (R. 133). While he listed other providers, plaintiff indicated that he had last seen them in 1992 (Dr. Traywick and Baptist Medical Center South), 1974 (Martin Army Hospital), and 1988 (Sylacauga Health & Rehabilitation) – the most recent of these visits occurred seventeen years before plaintiff filed the present

applications and preceded his alleged onset date by more than a decade.  (R. 130-32).

Plaintiff reported that all of his current medications were prescribed by the Veterans

Administration facility (R. 133), which had also ordered and performed all of his reported

medical tests (R. 134).  In the written statement he gave to the ALJ on the day of the hearing,

plaintiff listed four physicians by name whom he had not listed individually in his disability

report.  (R. 168).  Two of them – Dr. Islam and Dr. Sundaram – treated plaintiff at the VA

medical center.  (Id.; see also Exhibits C1F and C5F).  Plaintiff also identifies Dr. Parker of

Montgomery and Dr. Williams of Sylacauga.  (R. 168).   Plaintiff did not state on the

document he gave to the ALJ that he received treatment from either Dr. Parker or Dr.

Williams within the twelve months preceding his application filing date, or even after his

alleged onset date, though his argument before this court indicates otherwise.  (See Doc. #

11, p. 2).

   The administrative transcript demonstrates that the ALJ had no obligation to seek

medical records from any of plaintiff's medical providers other than the Veterans

Administration, the only facility from which plaintiff had sought treatment in the twelve

months preceding the filing of his applications.  Ellison, 355 F.3d at 1276; 20 C.F.R. §§

404.1512(d), 416.912(d).  The VA records before the ALJ reflected treatment and evaluation

of plaintiff's right knee injury and his complaints relating to shortness of breath and cough;

the record included recent diagnostic imaging for both, including knee x-rays in 2009 and

chest x-rays in 2010.  (See Exhibits C1F and C5F).  The record before the ALJ did not

suggest any need for further x-ray imaging.  As noted above, plaintiff claims that he refused

to attend the consultative examination for the pulmonary function test because he had determined that they could not also perform x-rays.  (R. 27; Doc. # 15, ¶ 3).  However, a VA radiologist compared a chest x-ray the VA performed on September 26, 2011 – less than five months after the ALJ's decision – to the 2010 chest x-ray and noted no significant change; he further stated, "No active disease is noted."  (Exhibit C6F, R. 207).[4]  The record affirmatively establishes that plaintiff suffered no prejudice by virtue of the ALJ's failure to order an additional chest x-ray.  Thus, the ALJ's failure to order it does not establish grounds for reversing the Commissioner's decision.  See Jones v. Commissioner of Soc. Sec. Admin., Miami, S Region, 497 Fed. Appx. 888, 892 (11th Cir. 2012)(claimant must demonstrate prejudice to establish that the ALJ's failure to develop the record  deprived him of due process).

### Dr. Traywick's Billing Record

---

[4]  The court considers evidence first presented to the Appeals Council – including the September 2011 x-ray report – in determining whether plaintiff has established that the Commissioner's decision is due to be reversed pursuant to sentence four of 42 U.S.C. § 405(g). Evidence first presented to this court may be considered only on the issue of whether a "new evidence" remand pursuant to sentence six is warranted.  In this case, plaintiff presented some evidence at both levels.  Plaintiff's final correspondence forwarding evidence to the Appeals Council is dated less than a month before the Appeals Council issued its decision denying review; there is no indication of the date on which the Appeals Council received it.  While it is included in the administrative transcript, the Appeals Council did not acknowledge it or make it a part of the record. (R. 1-8)(acknowledging Exhibits C6F and C7F only).  In this case, the "good cause" standard of sentence six is satisfied, since plaintiff sent it to the Appeals Council promptly after his January 10, 2012 medical evaluation.  Because the Appeals Council did not incorporate it into the record and does not appear to have considered it, the court treats the evidence at R. 5-8 as if plaintiff had first submitted it to this court.  See Timmons v. Commissioner of Social Security, __ Fed. Appx. __, 2013 WL 3388234 (Jul. 9, 2013)(accepting parties' agreement that it was appropriate to treat such evidence as first submitted to the district court, but noting that the Commissioner did not dispute "good cause").

In his reply brief, plaintiff also argues that the ALJ's "clerical" error or omission is evidenced by the fact that "his Billing stat[e]ment from Dr. Trawick clearly shows that he was treated by more than the VA staff, Other Health Providers include Dr. Parker, Dr. Ebberhardt, Dr. Williams, Sylacauga Hospital, and Med One." (Doc. # 15, ¶¶ 4-5). The billing statement to which plaintiff refers is attached to his initial brief, along with other medical evidence. (Doc. # 11-2). Plaintiff first submitted this billing record to the court; he did not provide it to the ALJ or to the Appeals Council. Thus, the court may consider it only to determine whether it is new evidence warranting remand under sentence six. "To remand under sentence six, the claimant must show the evidence is new and material and was not incorporated into the administrative record for good cause. New evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" Timmons, 2013 WL 3388234 at *5 (citations omitted). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." Jones, 497 Fed. Appx. At 892 (citing Ingram, 496 F.3d at 1267).

Dr. Trawick's billing balance sheet reflects charges for services provided to plaintiff on eleven dates between 1979 and 1991 – *i.e.* approximately fourteen to twenty-six years before plaintiff's alleged onset date of June 1, 2005. It is not "new" evidence, and plaintiff has advanced no good cause for his failure to submit it during the administrative proceedings. Additionally, the document is not material; it provides no information about the nature or severity of plaintiff's impairments. Thus, Dr. Trawick's billing balance sheet does not provide grounds for a sentence six remand.

**Fair Dealing as to Rules, Regulations, and Establishment**

Plaintiff does not explain the basis for the fourth issue he raises – *i.e.*, whether the "SSA is dealing fairly in regard to its own Rules, Regu[l]ations, and Establishment" – in either his initial brief or his reply brief.  (Doc. # 11, p. 3)  The court treats this argument– along with his contention that his injuries and their effects render him disabled – as a general argument that the ALJ's decision is not supported by substantial evidence and/or proper application of the law.

**The ALJ's Decision**

The Commissioner's regulations prescribe a five-step "sequential evaluation process" for evaluating claims of disability.  20 C.F.R. §§ 404.1520, 916.920.

> At the first step, the claimant must prove that [he] has not engaged in substantial gainful activity. At the second step, [he] must prove that [he] has a severe impairment or combination of impairments. If, at the third step, [he] proves that [his] impairment or combination of impairments meets or equals a listed impairment, [he] is automatically found disabled regardless of age, education, or work experience. If [he] cannot prevail at the third step, [he] must proceed to the fourth step where [he] must prove that [he] is unable to perform [his] past relevant work. At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform. If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove [he] is unable to perform those jobs in order to be found disabled.

Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999)(citations omitted).  The Commissioner follows the steps in this "set order" and, if the Commissioner can find that a claimant is disabled or is not disabled at any step, the Commissioner "make[s] [his] determination or decision and . . . [does] not go on to the next step."  20 C.F.R. § 404.1520(a)(4),

§ 416.920(a)(4).

In this case, the ALJ concluded his analysis at the second step. He found that plaintiff has not engaged in substantial gainful activity since June 1, 2005, his alleged onset date. (R. 16). He then concluded that, while plaintiff has medically determinable impairments – mild chronic bronchitis, benign granulomatous disease, and knee arthralgias – he "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months" and, therefore, does not have a severe impairment or combination of impairments. (Id.). "At the second step of the five-step analysis, the claimant bears the burden of proving that [he] has a severe impairment or combination of impairments." O'Bier v. Commissioner of Social Security Administration, 2009 WL 1904706, 1 (11th Cir. Jul 2, 2009).

> A severe impairment is an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities. Id. §§ 404.1521(a), 416.921(a). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." McCruter v. Bowen, 791 F.2d 1544, 1546 (11th Cir.1986); see also 20 C.F.R. §§ 404.1521(a), 416.921(a). The claimant's "burden at step two is mild" and "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir.1986). However, a mere showing of a "deviation from purely medical standards of bodily perfection or normality" is insufficient; instead, the claimant must show the effect of the impairment on [his] ability to work. McCruter, 791 F.2d at 1547.

Smith, 501 Fed. Appx. at 878. While the claimant's burden at this step is "mild," it is not satisfied by a mere showing of medical diagnoses. The claimant must establish that the

diagnosed impairment or combination of impairments caused work-related functional limitations, and "the mere existence of ... impairments does not reveal the extent to which they limit [the claimant's] ability to work." Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Additionally, the Step 2 analysis is two-fold. Plaintiff must establish both that his impairment or combination of impairments is medically "severe," *and* that his "severe" impairment or combination of impairments lasted or can be expected to last for "for a continuous period of at least 12 months" (20 C.F.R. § 404.1509). See 20 C.F.R. § 404.1520(a)(4)(ii)("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment *that meets the duration requirement in § 404.1509*, or a combination of impairments that is severe *and meets the duration requirement*, we will find that you are not disabled.")(emphasis added); 20 C.F.R. § 416.920(a)(4)(ii), § 416.909; see also Zaccaria v. Commissioner of Social Security, 267 Fed. Appx. 159, 161 (3rd Cir. 2008)("To satisfy step two, Zaccaria was required to demonstrate that . . . by September 30, 1995, he had suffered a severe impairment or combination of impairments which lasted or could be expected to last for twelve months[.]"); Delavan v. Astrue, 2008 WL 2816073, 2 (M.D. Fla. Jul 21, 2008)("The issue of whether the plaintiff has a severe impairment arises in step two of the Commissioner's sequential analysis and is thus something of a threshold inquiry. The threshold, however, becomes higher where, as here, there is a question whether the plaintiff can show that her impairment was severe for at least twelve months. Thus, at step two, a

claimant, in order to proceed further in the sequential analysis, must show not only that she has a severe impairment but that her impairment meets the durational requirement of a continuous period of at least twelve months.").

The court concludes that the ALJ's step two decision is supported by substantial evidence.  As the Commissioner argues (see Doc. # 12, pp. 9-12), plaintiff's treatment for his knee impairment was quite sporadic.  The practitioners' clinical findings upon physical examination and the results of plaintiff's knee x-rays (showing "normal standing views of the knees bilaterally") do not suggest functional limitations at a "severe" level for the required duration. (See Doc. # 25; Exhibit C1F (7/2/02 knee evaluation including normal x-rays and medical opinion of no "functional loss present in the right knee due to pain or fatigability; 2/14/09 knee evaluation including some abnormal findings on clinical examination (antalgic gait, crepitus, tenderness, and slightly decreased right knee flexion), but normal x-ray findings and diagnoses of "minimal" spurring of right knee and right knee strain); Exhibit C2F (non-examining state agency physician's note that, according to treating physician, "the knee is not a severe impairment").  The medical evidence establishes that plaintiff has lung impairments for which he is followed by a VA physician and uses prescribed medication. (Exhibits C1F, C5F).  The records do not indicate, other than through plaintiff's subjective complaints, the extent of any functional limitation caused by the lung impairments.  The ALJ properly discredited plaintiff's subjective complaints of functional limitations arising from his medically determinable lung impairments, citing his failure to attend the consultative examination with a specialist for further evaluation of his impairment

and, also, plaintiff's response to the nurse practitioner's attempts to counsel him about smoking cessation.  (R. 20, R. 191 (disability examiner's note about plaintiff's refusal to attend consultative examination), R. 181 (nurse practitioner's January 2009 note that "Patient is ambivalent about smoking, but is NOT prepared to quit at this time" and concluding that referral for treatment "not indicated")(emphasis in original); see 20 C.F.R. § 416.918 (providing that a claimant may be found disabled for failing or refusing to take part in a consultative examination or test without a good reason).  The reason plaintiff gave for failing to participate in the pulmonary function test – that he would not be x-rayed – is not a "good" reason.  (See R. 27, 191).  Even after the disability specialist explained the need for the testing, plaintiff told her, "I will not go."  (R. 191).  The plaintiff's change of heart about attending the evaluation, first expressed at the administrative hearing, did not create a duty on the part of the ALJ to delay the hearing in order to allow plaintiff another opportunity to attend a consultative evaluation.[5]

_____

[5] Plaintiff argues that the ALJ failed to consider the side effects of his medications.  In the disability report plaintiff filed in support of his application, plaintiff indicated that he takes Albuterol, Butalbital, Etodolac, Naproxen, Niacin, Simvastatin, and Theophylline. (R. 133).  For side effects, he noted only that the Etodolac causes "sleepiness" and that the niacin makes him "itchy." (Id.).  In response to a later query about his pain medications, plaintiff wrote, "Etodolac - knee, Theophylline & Albuterol - Lung[,] Simvastatin - c[h]olesterol." (R. 146).  He again noted drowsiness as a side effect and, also, a loss of his sex drive. (R. 138, 147).  In a list of medications he gave to the ALJ, plaintiff stated that he also takes "Numerous over the Counter pain Rel[ie]vers." (R. 168; see also R. 31 (testimony that he uses over-the-counter pain relievers and heating pads for his back)).  During his testimony, however, plaintiff did not mention any medication side effects. (R. 22-42).  He testified that he gets his medications from the VA and takes over-the-counter medications, and that his most recent appointment before the hearing was in January 2011. (R. 30-32).  The treatment note plaintiff gave to the ALJ for that appointment includes no reference to prescribed medications (R. 196); the only prescriptions noted elsewhere in plaintiff's VA records are the Etodolac, Albuterol, Theophylline (Theo-dur), and Simvastatin. (R. 173, 178, 180-81). The

## Evidence Submitted to Appeals Council

The evidence plaintiff submitted to the Appeals Council includes – in addition to the previously mentioned September 2011 chest x-ray showing no significant change and no active disease (Exhibit C6F): (1) a report for an October 2011 "Holter" test, assessed as "benign" by the physician (R. 210-12); (2) a *partial* treatment note indicating that plaintiff was referred to the VA diabetic clinic in October 2011 due to an "incidental finding of an enlarged left adrenal gland in January 2008" but had "absolutely no idea why he [was] being seen" in the clinic at that time (R. 213). This new evidence does not deprive the ALJ's decision of substantial evidentiary support and does not render the denial of benefits erroneous. See Ingram, 496 F.3d at 1262 ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."). The Appeals Council did not, therefore, err in denying plaintiff's request for review of the ALJ's decision.

## Evidence Submitted to the Court

As noted above, evidence first submitted to the court provides a basis for remand

---

October 2011 VA treatment note that plaintiff sent to the Appeals Council showed that, at that time – five months after the ALJ's decision – plaintiff had no active or recently expired outpatient medications. (R. 213). Plaintiff's medical records reflect only one complaint about a side effect from medication; in 2002, plaintiff told the examining practitioner that he "takes occasional nonsteroidal anti-inflammatory drugs but has had some ill-effects from the medication and tends not to use them." (R. 188). Contrary to plaintiff's statement in his disability report that Etodolac causes sleepiness (R. 133), the nurse practitioner who examined plaintiff in February 2009 noted plaintiff's report that he experienced no side effects from his current treatment – the use of the NSAID Etodolac. (R. 173). The evidence of record does not demonstrate the existence of functional limitations arising from medication side effects.

under "sentence six" of 42 U.S.C. § 405(g) only if it is: (1) new; (2) material; and (3) not incorporated into the administrative record for good cause. Timmons, 2013 WL 3388234 at *5 (citations omitted).  As also discussed previously in the context of plaintiff's "clerical error" argument, Dr. Traywick's billing statement does provide a basis for sentence six remand.  The evidence that plaintiff submitted to the Appeals Council, but that was not considered at that level, is new and satisfies the good cause requirement.  (R. 5-8; see n. 4, supra).  However, it is not material.  It consists of a January 2012 pulmonary follow-up that does not demonstrate any change in plaintiff's pulmonary condition.  While the provider also notes plaintiff's complaint of "rather constant aching over the chest for several months with palpitations," he makes no diagnosis and advises plaintiff to follow-up with his primary care doctor and cardiologist. (R. 8). Plaintiff's October 2011 Holter test, as noted above, had been found to be benign.  (R. 210).  There is nothing in the January 2012 treatment note indicating the existence of a medically determinable cardiac impairment at all, let alone one that imposed work-related functional limitations at a "severe" level before the date of the ALJ's decision. Thus, there is no reasonable possibility that this treatment record would change the administrative outcome.

Plaintiff has submitted other evidence to the court: (1) a 1984 receipt for a payment of $35.00 signed by Dr. Gary Phillips and including a diagnosis of "Subluxing Patella Right Knee" (Doc. # 11-3, p. 1); (2) a September 29, 2011 printout of plaintiff's VA radiology reports and medications (Doc. # 11-3, pp. 2-15); (3) an October 1999 report showing a "normal" x-ray of plaintiff's right wrist (Doc. # 14, p. 2); (4) records of plaintiff's October

19

30, 2012 pulmonary follow-up appointment at the VA (during which plaintiff requested a second opinion, again reported smoking a pack of cigarettes per day and again refused referral to the tobacco cessation clinic)(Doc. # 17, pp. 4-7) (5) a November 14, 2012 VA nursing clinic note, indicating that plaintiff reported to the clinic for the requested second opinion (but including no notes from the evaluating physician)(id., pp. 3-4); (6) an October 30, 2012 knee x-ray determined to be "essentially normal" but finding a "minor abnormality" of "minimal enthesiopathic changes of the patella" (id., p. 2); (7) an October 31, 2012 follow-up chest x-ray noting "no significant interval change" since the June 2010 chest x-ray (id., p. 3); and (8) treatment records for plaintiff's February 11, 2013 visit to the VA nurse practitioner, with complaints of long-standing low back pain, with episodic radiation to his right hip, including a February 14, 2013 lumbosacral spine x-ray report and a prescription for Meloxicam (Doc. # 19).

The evidence of plaintiff's October 2012 through February 2013 evaluations at the VA (items 4-8 above) is new and satisfies the "good cause" standard. However, the new evidence relating to plaintiff's knee and pulmonary impairments (items 4-7) do not provide any additional information relevant to plaintiff's condition seventeen months earlier, at the time of the ALJ's decision. The new "essentially normal" knee x-ray does show a minor abnormality that was not previously identified. However, there is no indication that this minor abnormality existed or caused any functional limitations before the ALJ's decision. The evidence of plaintiff's evaluation for his complaint of back pain (item 8) is even further removed from the relevant period; the February 2013 examination took place over twenty-

one months after the ALJ's decision.  While it shows lumbar spine abnormalities, the radiologist indicates that they are "most likely degenerative" – there is nothing in the February 2013 x-ray report indicating that condition of plaintiff's spine was the same or similar in May 2011, or that the lumbar spinal impairment shown in the x-ray caused plaintiff to have severe functional limitations nearly two years previously.  (See Doc. # 19).[6]  Thus, this new evidence is not material and does not provide a basis for a sentence six remand.

The Appeals Council denied review on February 16, 2012. (R. 1-4).  The 1984 receipt from Dr. Phillips, the September 29, 2011 VA printout (which includes VA radiology reports and medication and the October 1999 wrist x-ray report are not new, as all were in existence and available to plaintiff well before the Appeals Council's action. Jones, 497 Fed. Appx. at 892.  Additionally, plaintiff has not demonstrated good cause for his failure to provide this evidence during the administrative proceedings. To the contrary, the administrative transcript affirmatively demonstrates the absence of good cause.  The VA records before the ALJ showed that plaintiff had sought treatment for his knee and lung impairments; as discussed above, the ALJ had no duty to obtain the records of treatment from plaintiff's other medical providers.  While it now appears that the VA records provided to the state agency were incomplete, the record demonstrates that plaintiff was aware of the evidence of record and failed to supplement it. Plaintiff – not the ALJ – bore the responsibility for providing additional medical evidence to establish the existence and severity of his medically

---

[6]  The February 2013 treatment note indicates that plaintiff declined smoking cessation assistance again, as he was "not ready to quit[.]" Doc. # 19, p. 5).

determinable impairments. 20 C.F.R. §§ 404.1512(c), 416.912(c)("*Your responsibility.* You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.")(italics in original).  The application summary the state agency provided to plaintiff on December 3, 2009, after he filed the present applications, includes the statements, "I understand that I must provide medical evidence about my disability, or assist the Social Security Administration in obtaining the evidence." (Exhibit C2D, R. 101)(original in capital letters).[7]

The state agency's explanation of its unfavorable determinations on plaintiff's claims listed no medical records other than the "CENTRAL AL VETERANS HEALTH Report Received 12/07/09[.]" (Exhibits C4B and C5B, see R. 60, 66).  In his May 10, 2010 request for a hearing before an administrative law judge, plaintiff indicated that he disagreed with the determinations on his claims "because all evidence concerning this matter was not reviewe[]d."  R. 91 (original in capital letters).  However, he further stated, "I have no additional evidence to submit."  (Id.).

In a letter she sent to plaintiff on August 19, 2010, the Hearing Office Director for the Montgomery Office of Disability Adjudication and Review advised the plaintiff that "[a]t the hearing, you may present your case to the ALJ who will hear and decide it.  The ALJ will

---

[7]  It further included the statement, "I understand that I may be requested by the state disability determination services to have a consultative examination at the expense of the social security administration and that if I do not go, my claim may be denied."  (R. 101).

consider the issue(s) you have raised and the evidence now in your file and any additional evidence you provide." (Exhibit C6B, R. 67). She advised plaintiff of his right to representation by way of two attachments: a two-page publication about legal representation and a separate notice providing plaintiff contact information for legal services organizations within Alabama and private referral organizations. (Id., R. 69-72). Within the body of her letter, she stated, "[a] representative can help you get evidence, prepare for the hearing, and present your case at the hearing." (Id., R. 67). She advised plaintiff of his right to review his file and to provide additional evidence, as follows:

**Providing Additional Evidence**

> If there is more evidence you want the ALJ to see, please submit it to us as soon as possible. If you need help, you should immediately contact our office, your local Social Security office, or your representative (if you appoint one). Evidence you cannot submit to us before the hearing may be brought to the hearing, but earlier submission of evidence can often prevent delays in reviewing your case. If a physician, expert or other witness is not cooperating with the production of documents important to your case, you may ask the ALJ to issue a subpoena that requires a person to submit documents or testify at your hearing.

**You May See the Evidence in Your File**

> If you wish to see the evidence in your file, you may do so on the date of the hearing or before that date. If you wish to review the file before the date of the hearing, please call us, as soon as you reasonably can.

(Id., R. 68)(bold-type headings in original).

In the Notice of Hearing he sent to the plaintiff on January 19, 2011, the ALJ also advised plaintiff of his right to review the file and to submit more evidence, as follows:

**You May Submit More Evidence and Review Your File**

> It is very important that the evidence in your file is complete and up to date. If there is more evidence, such as recent records, reports, or evaluations that you want me to see, please mail or bring that evidence to me as soon as possible. If you cannot submit the evidence to me before the hearing, you may bring it to the hearing. Submitting evidence to me before the hearing can often prevent delays in reviewing your case.

> If you want to see your file before the date of your hearing, please call this office and make arrangements. If your file is electronic, you may ask for a copy on compact disc. You may also review your file on the day of your hearing if you come in at least 30 minutes before the time set for your hearing. Please call us in advance if you will need more than 30 minutes to review your file.

(Exhibit C7B, R. 74)(bold-type heading in original); he also sent plaintiff a second copy of the two-page publication explaining his right to legal representation. (Id., R. 79-80). On January 28, 2011, plaintiff signed the acknowledgment form the ALJ sent to him with the Notice of Hearing. (R. 81, 84).

On the day of the hearing, plaintiff signed a form acknowledging his right to representation; the form explained that a representative "will help protect your rights" and "can, among other things, ... obtain and present documentary evidence." (R. 94). The rights advisement form further stated that plaintiff had a right to proceed without a representative and that, if he decided to do so, the ALJ would "conduct the hearing just as [he] would conduct it if [plaintiff] had a representative" but that, if plaintiff wanted to consult or obtain a representative, the ALJ would postpone the hearing and reschedule it within the next one to three months. (Id.). Plaintiff provided the ALJ with a statement of his "Work History,

Injury History, Medical Provider, And a listing of prescribed Medication," and also additional records from the VA medical facility. (Exhibits C11E and C5F; R. 167-68,193-205). Upon questioning by the ALJ at the beginning of the hearing, plaintiff confirmed that he had reviewed his file before the hearing, had no additional documentary evidence to submit, and wished to proceed without a representative. (R. 24-27). The record amply demonstrates that plaintiff had no good cause for failing to provide the ALJ or the Appeals Council with evidence that was available to him well before the conclusion of the administrative proceedings. Plaintiff is not entitled to the "do over" he now seeks.

The evidence plaintiff has first filed with this court does not provide grounds for remand under sentence six of 42 U.S.C. § 405(g), as none of the evidence satisfies all three requirements for such a remand.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the ALJ's decision that plaintiff was not disabled for purposes of either his Title II or Title XVI claims is supported by substantial evidence and a proper application of the law, that the Appeals Council did not err in denying review on the basis of the new evidence it considered, and that the evidence plaintiff first presented to this court does not provide grounds for a sentence six remand. Accordingly, it is the RECOMMENDATION of the Magistrate the decision of the Commissioner be AFFIRMED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any

objections to this Recommendation on or before July 30, 2013.  Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 16th day of July, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE